CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 22 2010

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RONALD D. SEVER, | ) |
| Plaintiff, | ) Case No. 7:10CV00406 |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| CEO OF PRISONER TRANSPORT SERVICES, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, AND JOHN DOE 4, | ) By: Glen E. Conrad<br>) Chief United States District Judge |
| Defendants. | ) |

Plaintiff Ronald D. Sever, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Sever alleges that the defendants, employees of Prisoner Transport Services of America (PTSA),[1] violated his rights when he was denied medical treatment for injuries he suffered in a motor vehicle accident and was thereafter detained under unconstitutional living conditions in a van for ten days, which also aggravated the pain from his injuries. The court has granted Sever's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(b) to the extent that Sever will not be required to prepay the filing fee. Upon review of the record, the court finds that the complaint must be summarily dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B).

---

[1] Sever identifies the defendants as: CEO of PTSA; John Does 1, 2, and 3, the three PTSA employees who picked him up in Virginia; and John Doe 4, the PTSA employee who planned the ten-day trip to transport Sever to Somerset County.

## Background

Sever alleges the following sequence of events from which his claims arise. Sever is an inmate at August Correctional Center (ACC) in Craigsville, Virginia, and has been for some time. On March 25, 2010, three PTSA employees (John Does 1, 2, and 3) arrived at ACC to transport Sever to Somerset County, Pennsylvania, where he was to be tried on a detainer, pursuant to his request for trial under the Interstate Agreement on Detainers. ACC officials escorted Sever to the sally port to board the PTSA van at 9:00 a.m. John Doe 1 produced a medical questionnaire and asked Sever lots of questions. When the form was completed, Sever asked John Doe 3 how long the trip would take and was informed that the van would not be going directly to Somerset County, as the PTSA men needed to travel first to Florida. Sever protested that such a long trip in handcuffs, shackles, and waist chain would cause him to sit in a hunched position that would aggravate his preexisting spinal cord injury—a compressed and herniated disc. John Doe 3 noted Sever's medical problems, but said, "[T]oo bad, you're going to Florida." Sever was then forced to sign paperwork that he was not allowed to read.

The John Does placed Sever in a van, in handcuffs and shackles, connected to a waist chain that prevented him from raising his hands above his belly. The van was not equipped with seatbelts, had poor ventilation, and smelled of gas and exhaust fumes. He sat on an 8" x 8" plastic seat, near a heavy steel cage. As the van left ACC, heading south, John Doe 1 was driving. The other John Does fell asleep almost immediately.

At approximately 11:00 a.m., while they were still in Virginia, John Doe 1 fell asleep at the wheel, and the van veered slowly off the road onto the shoulder. John Doe 1 awoke with a start and jerked the wheel hard to get back on the road. This sudden movement of the van slung

Sever out of his seat and slammed him, head first, into the steel cage. His shoulder hit a steel reinforcement bar, further compressing his vertebrae and leaving him in "immense pain." His back pain was also aggravated by the constant hunched position caused by the restraints.

When the defendants stopped for a bathroom break fifteen minutes later, they allowed Sever to use the bathroom and tried to clean him up. He told all three of them that he was in pain and needed medical attention. John Doe 3 promised to get him some pain medication, but said his injuries did not warrant immediate medical attention and refused to take him to a hospital. Sever was never given any pain medication.

The trip to Somerset, Pennsylvania, which would ordinarily have taken three and a half hours, took ten days, during which time the van traveled to several prison facilities in Florida, Georgia, Kentucky, Michigan,, Indiana, Tennessee, North and South Carolina, Virginia, New York, and New Jersey, before finally arriving at the Somerset County Jail on April 3, 2010 at 10:30 a.m. The PTSA employees often drove all night. Sever was allowed to sleep in a bed only three nights. Whenever he was in the van, he was restrained with handcuffs, shackles, and waistchain. PTSA employees purchased all of his meals at fast food restaurants, but refused to uncuff him so he could use his hands normally to unwrap or eat his food. As a result of these conditions, Sever suffered pain from his injured back, was sleep deprived for up to three days at a time, and malnourished.

Sever asked for the names of both shifts of PTSA drivers and officers, but they refused to tell him. When he told them that he intended to file a complaint with the transport company, they told him the company's name, but refused to give him an address. In his first four claims, Sever sues the defendants for denying him medical treatment for the pain he suffered after the

van veered off the road in Virginia. In his fifth claim, he alleges that the defendants acted with deliberate indifference to the fact that the living conditions in the van during the ten-day trip were cruel and unusual, particularly considering Sever's preexisting back injury and their failure to have his injuries medically assessed.

## Discussion

The court is required to dismiss any action or claim filed by a prisoner proceeding in forma pauperis if it determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Some courts have held that a private corporation and its employees, when performing traditional state functions such as maintaining the control and custody of prison inmates, can qualify as "persons" acting under the color of state law for purposes of liability under 42 U.S.C. § 1983. See, e.g., Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Holly v. Scott, 434 F.3d 287, 301 (4th Cir. 2006) (Motz, J., concurring) (citing similar holdings by courts outside the Fourth Circuit). In the United States Court of Appeals for the Fourth Circuit, the federal judicial circuit in which this court is located, however, "[i]t is an open question . . . whether § 1983 imposes liability upon employees of a

private prison facility under contract with a state." Holly, 434 F.3d at 292 n.3 (4th Cir. 2006) (finding that Bivens did not extend to provide federal inmate with Eighth Amendment claim against individual employees of private corporation operating prison whose actions were not fairly attributable to the federal government). In Sever's case, however, the court need not determine whether or not an inmate may bring a § 1983 action against employees of a private prisoner transportation corporation for allegedly unconstitutional actions taken against state prisoners, because Sever has not alleged facts stating any actionable § 1983 claim against the only defendant he has identified: the CEO of PTSA.

Under § 1983, a supervisory official can be held liable for constitutional violations committed by his subordinates only if these violations were caused in some way by his personal actions or inaction. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). The Fourth Circuit in Shaw identified

> three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. (omitting citations).

In his claim against the CEO of PTSA, Sever fails to allege facts satisfying any of the three elements set forth in Shaw. Nothing in his allegations suggests that the CEO had any personal knowledge of the transport officers' conduct or that their actions posed a risk of constitutional injury to Sever as a prisoner in their care. Sever's allegations also offer no

indication that in acting as they did during the trip, the transport officers were following any specific policy or directive for which the CEO was personally responsible. Accordingly, Sever fails to demonstrate any causal link whatsoever between the CEO and the particular constitutional injuries of which Sever complains. As he thus fails to state any plausible § 1983 claim against the CEO, his complaint must be summarily dismissed without prejudice as to this defendant, pursuant to § 1915(e)(2)(b).

The court must also dismiss without prejudice Sever's § 1983 claims as to the four John Doe defendants. First, his allegations fail to state a claim regarding deprivation of medical treatment against these defendants. Such a claim requires a showing that the plaintiff had a serious medical need for treatment and that the defendant officials acted with deliberate indifference to that need— that they knew of the need, knew that it presented a serious risk of harm if not addressed, and failed to respond reasonably to the risk. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain); Farmer v. Brennan, 511 U.S. 825, 837-44 (1994) (defining deliberate indifference). Sever makes no such showing. While he alleges that the accident in Virginia and the hunched position the restraints forced him to assume in the van aggravated his preexisting back condition and required treatment, he does not forecast evidence on which he could prove the nature or seriousness of these alleged, additional injuries to his back. Moreover, he fails to allege any visible symptom that he exhibited after the accident from which the defendants would have known that he needed immediate medical care for his back condition or any other injuries suffered during the accident.

Similarly, Sever fails to allege sufficient facts to state an Eighth Amendment claim against these defendants regarding the living conditions to which he was subjected during the van trip. An inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To state a § 1983 claim here, plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993). Sever does not allege facts on which he could prove suffering any significant injury as a result of the challenged living conditions.

Because Sever's allegations are insufficient to state any Eighth Amendment claim here, the claims against the John Doe defendants must be dismissed, pursuant to § 1915(e)(2). Moreover, even assuming without finding that Sever conceivably could allege facts stating a § 1983 claim against these officers, plaintiff has not identified them sufficiently to allow the court to accomplish service of process upon them. For these reasons, all claims against the John Doe defendants will be dismissed without prejudice.

To the extent that Sever's allegations could be construed to assert tort claims under Virginia law against any of the defendants, they must be dismissed, because Sever fails to allege the necessary facts for this court to exercise jurisdiction over them. Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Generally, a case can be originally filed in a federal district court if there is federal question jurisdiction under 28 U.S.C.

§ 1331 or diversity of citizenship jurisdiction under 28 U.S.C. § 1332. Here, the court has found that Sever's § 1983 claims, the only federal questions raised in this case, must be dismissed. Therefore, the court declines to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c), over any state law claims raised in the action.

Moreover, there is no independent basis for the court to exercise jurisdiction over such state law claims. To invoke the court's diversity jurisdiction under 28 U.S.C. § 1332(a), there must be complete diversity of citizenship between the plaintiff and all of the defendants. Here, although plaintiff and the CEO of PTSA appear to reside in different states, plaintiff has not alleged any facts concerning his own state of residency or the states in which the John Doe defendants reside.[2] As a result, any state law claims raised in the complaint are subject to dismissal for lack of subject matter jurisdiction.

## Conclusion

For the stated reasons, the court concludes that the complaint must be dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(b), for failing to state a claim upon which relief could be granted. An appropriate order will issue this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

---

[2] Diversity jurisdiction also requires a showing that the amount in controversy exceeds $75,000. § 1332(a). While Sever's complaint alleges that he is seeking $5,000,000 in compensatory damages from each of the defendants, other than his own allegations of pain and suffering, he offers no evidence on which he could prove this damage amount by a preponderance of the evidence.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 22nd day of November, 2010.

_____
Chief United States District Judge